1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   SHERMAN MANNING and
     PETER ANDRIST,
12
             Plaintiffs,              No. 2:12-cv-2440 MCE AC P
13
        vs.
14
     M. BUNNELL, et al.,
15
             Defendants.              FINDINGS AND RECOMMENDATIONS
16   _____/

17              On May 8, 2013, the court held a hearing on three motions to dismiss brought by

18   various defendants (ECF Nos. 19, 25 and 45).  Robert Blasier and Douglas Oden appeared for

19   the plaintiffs Sherman Manning and Peter Andrist.  Kristina Gruenberg appeared for defendants

20   Humphries, Johnson, Ralls and Wenker.  Deputy Attorney General Kelli Hammond appeared on

21   behalf of defendants Bunnell, Compton, Couch, Goldsmith, May, O'Brien, Schroeder, and

22   Stratton.  Aaron Cohen appeared for defendant M. Jimenez.

23              At the hearing, the undersigned granted the unopposed oral motions of defendants

24   Bunnell, Compton, Couch, Goldsmith, May, O'Brien, Schroeder, and Stratton (movants, ECF

25   No. 25), and of defendant Jimenez (movant, ECF No. 19), to join the motion of defendants

26   Humphries et al. (ECF No. 45) insofar as that motion seeks dismissal of Claims 3, 4 and 5 on

1

1   grounds equally applicable to all defendants.  On review of the motions, the documents filed in

2   support and opposition, upon hearing the arguments of counsel for plaintiffs and for the defense,

3   and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

4                    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

5           Plaintiff Manning is a California state prisoner who has published numerous

6   books about topics including the criminal justice and prison systems.  Plaintiff Andrist is

7   Manning's publisher.  They bring civil rights claims pursuant to 42 U.S.C. § 1983, and related

8   state law claims, arising primarily from alleged interference by prison staff with Manning's

9   incoming and outgoing mail and retaliation for his publishing activities.

10          The action is proceeding on the Amended Complaint, ECF No. 10, filed on

11  November 9, 2012.  On November 26, 2012, the undersigned ordered plaintiffs to serve the

12  amended complaint upon the thirteen named defendants.  ECF No. 12.  Thereafter, defendants

13  variously moved to dismiss.  Defendants Humphries, Johnson, Ralls and Wenker also filed an

14  answer to those claims not challenged in their motion to dismiss.  ECF No. 43.

15          The Amended Complaint alleges that over a period of several years the

16  defendants destroyed and/or delayed Manning's incoming and outgoing mail, including

17  correspondence with Andrist and with individuals interested in his books.  Although the two

18  different theories are not plainly distinguished in the Amended Complaint, Manning alleges both

19  (1) direct interference with his exercise of First Amendment rights and (2) retaliation (in the

20  form of transfer, threats, interference with medical care, and false accusations of misconduct as

21  well as interference with mail) for his exercise of his First Amendment rights.  In addition to the

22  First Amendment claim(s) that are the heart of this case, plaintiffs also allege violations of the

23  Eighth Amendment related to plaintiff Manning's illness following an alleged retaliatory

24  transfer, and assert pendent state law claims for negligence and for tortious interference with

25  contract.

26  ////

2

LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th  Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th  Cir. 1989).

DISCUSSION

*Claim One: Eighth Amendment (Valley Fever Claims)*

Plaintiff Manning alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when, at some point in 2006, defendant Bunnell ordered Manning's transfer to Pleasant Valley State Prison (PVSP).  Bunnell was the associate warden at Mule Creek State Prison, where Manning was then housed.  According to the complaint, Bunnell told Manning, "I am having you transferred to Pleasant Valley State Prison so that you can catch Valley Fever and write about that."  ECF No. 10, ¶ 22.  Manning, who suffers from asthma and was therefore susceptible to infection, subsequently contracted Valley Fever at PVSP and required hospitalization for fourteen months.  The medication Manning must take as a result of Valley Fever precludes treatment for his other continuing medical problems.  ECF No. 10, ¶¶ 22-27.  In addition to claiming that Manning's exposure to Valley Fever violates the Eighth Amendment, plaintiffs seek relief for "intentional torts in personal injury and/or negligence."

3

1   ECF No. 10, p. 15.[1]

2         Defendant Bunnell seeks dismissal of this claim on statute of limitations grounds,

3   as the transfer occurred in 2006 and this action was filed on September 26, 2012.  See ECF No. 1

4   (initial complaint).  Plaintiff contends that Bunnell is equitably estopped from asserting a

5   timeliness defense because he was part of a conspiracy to interfere with plaintiff's mail, and the

6   destruction and delay of mail prevented Manning from filing his complaint within the limitation

7   periods.

8         Statute of Limitations

9         Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's

10   statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 265 (1985);

11   Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004), cert. denied, 546 U.S. 820 (2006).  In

12   California, a two-year statute of limitations applies.  See Cal. Code Civ. P. § 335.1; Jones, 393

13   F.3d at 927.  The federal court also applies the forum state's law regarding tolling, including

14   equitable tolling when not in conflict with federal law.  Hardin v. Straub, 490 U.S. 536, 537-39

15   (1989); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999), cert. denied, 529 U.S. 1117 (2000).

16   California provides that the applicable limitations period is tolled for two years on grounds of

17   "disability" when a litigant is incarcerated.  Cal. Code Civ. P. § 352.1(a).  This tolling provision

18   operates to delay the running of the limitations period.  Carlson v. Blatt, 87 Cal. App. 4th 646,

19   650 (2001) (imprisonment tolls running of limitations period for two years from accrual of cause

20   of action); Fink, 192 F.3d at 914 (same); Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th

21   Cir. 1999) (same).  The disability tolling statute effectively extends the limitations period for a

22   California prisoner's § 1983 claim to four years.

23         Federal law governs when a cause of action accrues in the § 1983 context.

24

25      [1]   To the extent that Claim One alleges the adverse transfer was in retaliation for
Manning's publications about prison life, the allegations are more properly considered in relation
26   to plaintiff's First Amendment claim(s).

1  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).  A § 1983 claim accrues

2  when the plaintiff knows or has reason to know of the injury which is the basis of the action.

3  Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001).  Here, the parties agree that the claim

4  against Bunnell accrued at the time of Manning's transfer to PVSP, on an unspecified date in

5  2006.  Accordingly, the claim should have been filed in 2010 and is untimely absent some

6  exception to the statute of limitations.

7                    Equitable Estoppel

8          Plaintiffs seek relief from the operation of the statute of limitations on equitable

9  estoppel grounds.  The doctrine of equitable estoppel, or fraudulent concealment, is based on the

10 principle that a party "should not be allowed to benefit from its own wrongdoing."  Collins v.

11 Gee West Seattle LLC, 631 F.3d 1001, 1004 (9th Cir. 2011).  The doctrine "focuses primarily on

12 the actions taken by the defendant in preventing a plaintiff from filing suit."  Santa Maria v. Pac.

13 Bell, 202 F.3d 1170, 1176 (9th Cir. 2000).  In the Ninth Circuit, the plaintiff carries the burden

14 of pleading and proving the following elements of equitable estoppel:

15             (1) knowledge of the true facts by the party to be
              estoppel, (2) intent to induce reliance or actions
16            giving rise to a belief in that intent, (3) ignorance of
              the true facts by the relying party, and (4)
17            detrimental reliance.

18 Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011) (citing Bolt v. United

19 States, 944 F.2d 603, 609 (9th Cir.1991)).

20          Manning contends that he made numerous efforts in 2008 to bring a suit regarding

21 his Valley Fever allegations, but his actions were all dismissed for failure to prosecute.  Plaintiffs

22 attribute this failure to the defendants' collective interference with Manning's mail, including

23 mail to and from the courts.  ECF No. 42 at 8.  Manning provides exhibits showing that the

24 Fresno division of this court sent him a letter dated November 20, 2009 regarding an in forma

25 pauperis application, but that he did not receive this letter until January 29, 2013.  See ECF No.

26 42-3 at 2-7.  Manning asserts that he filed six cases in 2008, and also directed letters to Judges

5

1   Thelton Henderson and Karlton complaining of interference with his mail, efforts of defendant

2   Bunnell and others to keep him from suing and from seeing a specialist about his disease, and

3   sexual assault by staff.  ECF Nos. 42-4 & 42-5.  He provides letters that he wrote to various

4   attorneys seeking representation concerning the Valley Fever allegations, to which he received

5   no response until January of 2013.  ECF Nos. 42-6 & 42-7.  The letter from one of the attorneys

6   is dated January 15, 2009.  He includes letters to wardens before and after his transfer to PVSP,

7   and mail logs from September 2008 through part of September 2012 that document

8   correspondence to various state and federal officials and to law offices.  ECF Nos. 42-8 through

9   42-10.  Manning provides a declaration stating, inter alia, that he was foreclosed from sending or

10   receiving mail for fourteen months while hospitalized for Valley Fever and thereafter sent 75-

11   100 letters seeking assistance, letters he believes were either destroyed or for which he never

12   received responses.  ECF No. 42-11 at ¶¶ 3-4.  Manning also asserts that he would not have been

13   able to proceed before 2010 because the response to his third level administrative appeal filed in

14   2008 was not provided to him until 2010.  ECF No. 42 at 10.

15           This showing does not establish the elements of equitable estoppel.  First, the

16   court notes that its records do not support plaintiffs' characterization of his 2008 cases.  There

17   were not six cases but three, each of which was transferred and assigned a new case number in

18   the receiving district.  The Fresno case, No. 1:08-1589, was transferred from Sacramento and is

19   the same case as No. 2:08-0983.  Case No. 2:08-1881 and Case No. 2:08-1996 were both

20   transferred to the Central District on September 4, 2008, where they were assigned case numbers

21   2:08-cv-5792 and 2:08-cv-5891 respectively.  All three cases were ultimately dismissed for

22   failure to provide properly supported IFP applications as directed.[2]

23   _____

24           [2]     All three cases were opened on the basis of correspondence from Mr. Manning
     complaining of prison conditions and/or expressing fear for his life.  For example, the letter
25   docketed as a complaint in No. 2:08-1881 began, "My life is at stake," and went on to allege that
     Manning had been raped by staff and was being videotaped 24 hours a day.  The letter also
26                                                                                        (continued...)

1    Even crediting Manning's contention that his failure to comply with court orders

2 was caused by his failure to receive the orders in a timely fashion, that problem is not

3 attributable to defendant Bunnell, against whom plaintiffs assert equitable estoppel.  Bunnell was

4 the associate warden at Mule Creek prior to Manning's transfer to Pleasant Valley, and any

5 interference with mail related to Manning's attempted 2008 litigation regarding that transfer

6 happened at institutions where he was subsequently housed.  For example, plaintiff points to the

7 fact that Magistrate Judge Austin's order to submit an IFP application in the Fresno case was

8 received at CSP-Sacramento in December, 2008 but allegedly was not provided to Manning until

9 January 2013.  As will be discussed in greater detail below, CSP-Sacramento officials

10 discovered a volume of previously-undelivered incoming and outgoing inmate mail in early

11 2012.  This mailroom fiasco affected many inmates and has given rise to a volume of litigation

12 with which the court is quite familiar.  The problems with the CSP-Sacramento mail room,

13 however, had nothing to do with defendant Bunnell.  Moreover, the dockets of Manning's

14 Central District cases reflect that he was housed at the California Men's Colony in San Luis

15 Obispo at the times relevant to that litigation.  Regardless of where Manning was housed and

16 which institution(s) mishandled his mail, however, plaintiffs have failed to establish that

17 defendant Bunnell prevented Manning from filing suit.[3]

18 _____

19    [2](...continued)
stated that Manning wanted to sue the corrections department and PVSP "for Valley Fever," but

20 was not "qualified" to do so.  He sought appointment of counsel.  Case No. 2:08-1881, ECF No. 1.

21

22    [3]    Plaintiffs' conclusory allegation that Bunnell was part of a conspiracy to disrupt
or destroy Manning's mail cannot overcome this defect in the equitable estoppel theory.  The
deficiencies of the complaint's conspiracy allegations under Rule 12(b)(6) standards will be

23 discussed below.  Even if plaintiffs were able to adequately allege facts establishing a conspiracy
among the CSP-Sacramento defendants (which they have not yet done), that would not help

24 plaintiffs in this context.  In opposition to the statute of limitations defense, plaintiffs have failed
to allege – let alone prove – facts that would establish Bunnell's participation in a conspiracy to

25 disrupt Manning's mail and/or access to the courts during the limitations period.  Accordingly,
plaintiffs have failed to satisfy their burden as the party asserting equitable estoppel.  See Bolt,

26                                                                (continued...)

7

Moreover, again assuming that Manning did not receive the court orders directing him to submit IFP applications, the record does not support the broader claim that his ability to access the courts was effectively obstructed during the limitations period.  The dockets of Manning's 2008 cases, his exhibits in opposition to the motion to dismiss, and the publication dates of his books,[4] all demonstrate that Manning was in fact able to send and receive mail during the limitations period and was able to get many documents to the court and to other recipients even if other mail failed to go through.  The mail logs submitted as Plaintiff's Exhibit I, ECF No. 42-10, document hundreds of pieces of outgoing mail sent by Manning in 2008, 2009 and 2010.  While some letters are identified as "mishandled" or "delayed," these are a `minority.  Even if the extent of mail mishandling is under-reported in the log, the undersigned finds that Manning's documented ability to communicate with the outside world despite those disruptions undercuts his claim that he was affirmatively prevented from filing suit.

Finally and most fundamentally, equitable estoppel applies where a defendant has affirmatively misled the plaintiff regarding the substance of the claim.  For example, in Estate of Amaro, supra, equitable estoppel applied because police officers misrepresented the facts of an arrest-related fatality.  The victim's mother was advised by several lawyers on the basis of the police statements that she did not have a claim.  The Ninth Circuit held that equitable estoppel applies "where the plaintiff believes she has a cause of action but is 'dissuaded' from bringing the claim because of the defendant's affirmative misrepresentations and stonewalling within the limitations period."  Estate of Amaro, 653 F.3d at 813.  In this case, plaintiffs do not allege that Manning failed to bring his complaint sooner in reasonable reliance on any representation of

[3](...continued)
944 F.2d at 609.

[4]    According to the Amended Complaint, ECF No. 10, ¶ 44, plaintiff Andrist published books by Manning in years including 2006, 2009 and 2010.  The undersigned infers from these dates that Manning was able to communicate with his publisher during the limitations period.

1   Bunnell's concerning the merits of his complaint.  Plaintiffs have failed to plead and prove that

2   defendant Bunnell did or said anything regarding Manning's Valley Fever complaints upon

3   which Manning relied to his detriment.  Quite to the contrary, Manning argues that his failure to

4   pursue relief within the limitations period was caused by factors *other than* any

5   misrepresentation of fact by Bunnell.  There is no fraudulent concealment on these facts, and can

6   be no equitable estoppel.

7          Because the complaint was filed well outside the statute of limitations and

8   equitable estoppel does not apply, Claim One should be dismissed with prejudice as untimely.

9   Plaintiffs' related prayer for injunctive relief in the form of ongoing medical evaluation, ECF

10  No. 10 at 20, must also be dismissed.

11                    *Claim Two: First Amendment Violation(s)*

12         Plaintiffs contend that their First Amendment rights to freedom of speech were

13  violated by the defendants' direct participation in, and/or failure to prevent, an allegedly

14  systematic campaign of destruction, theft, and delay of Manning's incoming and outgoing mail.

15  Plaintiffs allege that this interference with mail impaired communications between author

16  Manning and publisher Andrist, and affected other privileged or protected communications

17  including legal mail, correspondence with public officials, and 602 inmate appeals.  Plaintiffs

18  claim further that defendants' actions constitute a long-term pattern of retaliation for Manning's

19  publication of works critical of the corrections system.  Accordingly, plaintiffs allege that

20  defendants' actions are content-based in violation of the First Amendment.  See ECF No. 10 at

21  ¶¶ 55-67.          Plaintiffs do *not* allege that defendants actually interfered with their ability to

22  publish any of Manning's writings.

23  _____

24         [5]   According to the Amended Complaint, "Plaintiffs Manning and Andrist have
    published approximately 15 books while Plaintiff Manning has been incarcerated. The book
25  titles with some publication dates include "American Dream A Search for Justice" (2003),
    "Creating Monsters" (2004), "From Palace to Prison (2005), "If it doesn't fit you must acquit"
26                                                                              (continued...)

9

All moving defendants contend that the specific allegations of fact as to each of them are insufficient to state a claim.  Before turning to the sufficiency of the allegations regarding the individual defendants, the court must address an overarching conceptual defect in Claim Two: the failure to distinguish between direct violations of a constitutional right and retaliation for the exercise of a constitutional right.

Plaintiffs appear to claim both that (1) the alleged destruction of and interference with Manning's mail directly violated plaintiffs' First Amended right to free speech, and (2) that the  alleged destruction of and interference with Manning's mail, as well as other acts not alleged to have directly violated a constitutional right[6], were acts of retaliation for plaintiffs' publications critical of the prison system.  These are distinct theories for relief with distinct elements that must be pleaded and proved.  Compare Pepperling v. Crist, 678 F.2d 787, 789-90 (9th Cir. 1982) (recognizing limited First Amendment right of inmates to communicate by mail with persons outside the prison) and Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir 1988) (elements of § 1983 claim for direct violation of a constitutional right) with Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (elements of retaliation claim).  While plaintiffs may certainly allege these grounds for relief in the alternative,[7] the Amended Complaint's failure to separately

_____

[5](...continued)
(2005), "Blue Eyed Blonde" (2006), "Blue Eyed Blonde 2" (2009), "Kids Killing Kids" (2010), "Why They Hate Obama" (April, 2012), "Why Republicans Go To Hell" (in press September 2012), "Reach Beyond The Break And Hold On," "Dream And Grow Rich," "Through the Valley of the Shadow of Death," "Teens Are Dying/Parents Are Crying: Where Do We Go From Here?," "From the Palace to the Prison," and "Congressional Terrorists."  Several of these books are available through various outlets including Amazon.com (search for Sherman Manning)." ECF No. 10, ¶ 44.

[6]     For example, Manning alleges that he was improperly charged with a disciplinary violation and was falsely charged with sexually assaulting another inmate.  ECF No. 10 at ¶ 34 (alleging that defendant Stratton solicited a false rape charge), ¶ 35 (alleging that defendant Wenker issued an unfounded rules violation report).

[7]     If a fact-finder eventually found that the alleged interference with mail did not amount to a direct violation of plaintiff's First Amendment rights, such interference could (in

(continued...)

1   identify the facts alleged in support of each theory makes analysis of the claims unnecessarily

2   difficult.

3            Moreover, the complaint fails to articulate a conspiracy claim or to identify the

4   facts alleged in support of a conspiracy as to any defendant or defendants collectively.  When the

5   initial complaint in this action was dismissed with leave to amend, plaintiffs were advised of the

6   requirements for pleading conspiracy.  See ECF No. 9.  The Amended Complaint fails to satisfy

7   the requirements set forth in the court's previous order, suggesting that plaintiffs abandoned their

8   putative conspiracy claim.  The briefing on the motions to dismiss and arguments at the hearing

9   make it clear that plaintiffs do intend to allege a conspiracy.  This matter is discussed further

10  below.

11            Governing Legal Principles

12            Although the First Amendment rights of prisoners are necessarily curtailed by

13  security concerns, "a prison inmate retains those First Amendment rights that are not inconsistent

14  with his status as a prisoner or with the legitimate penological objectives of the corrections

15  system." Pell v. Procunier, 417 U.S. 817, 822 (1974).  Prisoners retain, subject to regulation

16  only for legitimate penological reasons, the rights to read and write and speak.  See Thornburgh

17  v. Abbott, 490 U.S. 401 (1989) (regulations limiting the outside publications prisoners may

18  receive must be reasonably related to legitimate penological interests); Prison Legal News v.

19  Cook, 238 F.3d 1145 (9th Cir. 2005) (prison ban on "bulk mail" violates First Amendment rights

20  of inmate subscribers to non-profit newsletter); Abu-Jamal v. Price, 154 F.3d 128 (3rd Cir. 1998)

21  (prison officials may not restrict publication of inmate's writing based on disapproval of its

22  content.  The First Amendment protects the right to communicate with persons outside the

23  prison walls, although this right may also be restricted on penological grounds.  See Valdez v.

24  _____

25       [7](...continued)
    theory) nonetheless constitute retaliatory harassment.  See Pratt v. Rowland, 65 F.3d 802, 806
26  (9th  Cir. 1995) (retaliatory act need not itself violate a constitutional right).

                                        11

1  Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002) (recognizing right and nonetheless upholding

2  telephone restrictions), cert denied, 538 U.S. 1047 (2003); see also Pell, 417 U.S. at 827-28

3  (upholding ban on visits from journalists who wish to interview individual prisoners).  The First

4  Amendment also protects inmate use of the mails.  Procunier v. Martinez, 416 U.S. 396 (1974)

5  (censorship of prisoner mail permissible only to protect interests in security, order, or

6  rehabilitation).  Finally, the First Amendment gives inmates the right to file grievances against

7  prison officials.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

8        The constitution forbids the punishment of prisoners for filing grievances or

9  exercising other rights.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  Retaliation for the

10  exercise of constitutional rights is actionable under § 1983 regardless of whether the retaliatory

11  action itself impairs any constitutionally-protected interest.  Id.  A prisoner's retaliation claim

12  has five elements that must be considered on a motion under Rule 12(b)(6): (1) plaintiff must

13  allege that the retaliated-against conduct is constitutionally protected; (2) plaintiff must claim

14  defendant took adverse action against the plaintiff; (3) plaintiff must allege a causal connection

15  between the adverse action and the protected conduct; (4) plaintiff must allege a chilling effect

16  or other harm; and (5) plaintiff must allege that the allegedly retaliatory action did not advance

17  legitimate goals of the correctional institution.  Watison, 668 F.3d at 1114-15.  Cognizable"

18  adverse actions" may include false disciplinary charges, Hines v. Gomez, 108 F.3d 265, 269 (9th

19  Cir. 1997), cert. denied, 524 U.S. 936 (1998), and repeated threats of transfer, Gomez v. Vernon,

20  255 F.3d 1118, 1127 (9th Cir.), cert. denied, 534 U.S. 1066 (2001).

21        Pleading Deficiencies Common to Allegations Against All Defendants

22        The allegations involving each individual defendant are discussed below.  Several

23  pleading deficiencies are common as to all defendants.  First, the complaint fails to link any

24  defendant to the destruction or delay of any particular items or categories of mail (other than in

25  the most general terms), and fails to allege specific acts or even approximate dates of any

26

defendant's participation in the destruction of or interference with Manning's mail.[8]  See Harper
v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (plaintiff must demonstrate that
defendants personally participated in the constitutional violation).  The complaint does make
specific allegations of threats (although the vast majority of these allegations are also vague as to
time),[9] but states only highly generalized allegations regarding defendants' actual interference
with plaintiff's protected speech.  While it may be that many factual details are unknown to
plaintiffs prior to discovery, entirely conclusory pleading is inadequate.  See Pena v. Gardner,
976 F.2d 469, 471 (9th Cir. 1992) (generalized and conclusory allegations of civil rights
violation insufficient to state claim).  As to most defendants, the complaint contains no more
than a general assertion that the individual participated in the destruction or delay of unspecified
mail.  This level of generality fails to sustain plaintiff's pleading burden.  Id.

Rather than directly alleging specific historical facts regarding defendants'
conduct, plaintiffs allege that various defendants made statements to Manning expressing
hostility toward him on the basis of his writings and inculpating themselves and each other in
multiple violations of Manning's rights.[10]  Even assuming the truth of the allegations that such
statements were made, they are insufficient without more to state a claim.  In short, the
allegations of admissions fail to "nudge[] [plaintiffs'] claims across the line from conceivable to
plausible."  Twombly, 550 U.S. at 570.

Second, insofar as plaintiffs mean to allege a direct violation of their First

---

[8]     The sole exception is an allegation that defendant Johnson deliberately withheld a
2009 letter to Manning from California Assemblywoman Karen Bass.  ECF No. 10 at ¶ 33.

[9]     See ECF No. 10 at ¶ 10 (threat by defendant Jimenez), ¶ 11 (threat by defendant
Ralls), ¶¶ 12 & 29 (threats by defendant Crouch), ¶ 13 (threat by defendant Compton), ¶¶ 15 &
30 (threats by defendant O'Brien), ¶ 33 (threats by defendant Johnson).

[10]    See, e.g., ECF No. 10 at ¶ 28 (statement by defendant Crouch inculpating himself
and defendants Johnson, Goldsmith and Bunnell), ¶ 31 (statement by defendant Wenker
inculpating himself and defendant Johnson), ¶ 32 (statement by defendant Compton inculpating
himself and defendant Johnson), ¶ 33 (statement by defendant Johnson inculpating himself and
other defendants).

1   Amendment rights by interference with Manning's mail, the complaint fails to identify an injury

2   that is more than de minimus.  See Stevenson v. Koskey, 877 F.2d 1435, 1440-41 (9th Cir. 1989)

3   (isolated instances of inmate mail mishandling do not violate the constitution).  Although

4   plaintiffs allege in conclusory terms the destruction of a large volume of mail, they do not allege

5   specific facts showing that any protected speech was actually impaired.  As previously noted,

6   plaintiffs do _not_ allege that Manning was prevented from getting any manuscripts to Andrist, or

7   that Andrist was prevented from publishing any of Manning's writings.  There is a single

8   allegation that defendant Crouch "stole one of Plaintiff Manning's manuscripts," ECF No. 10 at

9   ¶ 12, but the stolen manuscript is not identified and there is no suggestion that this alleged theft

10  prevented plaintiffs from publishing.

11          Third, insofar as plaintiffs mean to allege that the interference with mail was itself

12  an act of retaliation for Manning's published criticism of the prison system, the complaint fails

13  among other things to allege a chilling effect or any other specific harm from the alleged

14  destruction or delay of mail.  Because such harm is an essential element of a retaliation claim,

15  see Rhodes v. Robinson, 408 F.3d 559, 568 & n.11 (9th Cir. 2005), this deficiency is fatal to the

16  putative retaliation claim in its present form.

17          Finally, the allegation that Manning's mail was targeted because of his

18  publications is in tension with acknowledged background facts.  In March and April of 2012, the

19  CSP-Sacramento administration discovered a backlog of over 4,000 pieces of incoming and

20  outgoing inmate mail that had never been delivered.  The undelivered mail dated back as far as

21  2009.  Many inmates were affected, and the Prison Law Office contacted the institution

22  regarding the problem and attempted to monitor progress in the processing and distribution of

23  the mishandled mail.  As previously noted, this court experienced an influx of prisoner

24  complaints regarding the mailroom problems at CSP-Sacramento.  Exhibit 2 to the amended

25  complaint is captioned "Confirmation of mail problems at CSP, Sacramento" and includes

26  boiler-plate cover memos provided to Manning with the delayed delivery of mail and

14

1  acknowledging the problem, and a letter from the Prison Law Office (also apparent boiler-plate)

2  regarding the issue.  ECF No. 10-2.  The undersigned fully recognizes the seriousness of the

3  institutional failure involved in this large-scale mishandling of inmate mail.  However, in

4  relation to this lawsuit the important point is that mail delayed by general institutional failure is

5  not mail delayed because of animus toward Manning.  Plaintiffs' exhibits undercut to some

6  extent their allegations that Manning was targeted due to the contents of his writings.  See

7  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (on a 12(b)(6) motion,

8  court need not accept as true allegations contradicted by the exhibits).  The extent of this

9  contradiction is impossible to determine because the complaint fails to provide facts that might

10  distinguish mail mishandled as part of the general mailroom problem from mail that defendants

11  deliberately obstructed in violation of the First Amendment.

12      All these considerations support a finding that Claim Two is inadequately pleaded

13  overall and therefore fails to state a claim on which relief can be granted.  The specific

14  allegations as to each individual defendant are also insufficient in varying degrees to state a

15  claim, as the court now explains.  However, because the deficiencies primarily involve omissions

16  of pleading that may be curable, leave to amend will be recommended as to Claim Two as a

17  whole.

18              Sufficiency Of The Allegations Against Individual Defendants

19                  *Defendant Jimenez*

20      Although the Amended Complaint alleges that defendant Jimenez was an

21  employee at CSP-Sacramento, plaintiffs concede in their opposition to the motion that he is

22  actually a former Avenal State Prison employee.  ECF No. 41 at 2.  He is, or was, also the

23  president of the California Correctional Peace Officers Association (CCPOA).  ECF No. 10 at ¶

24  30.  Plaintiffs allege that Jiminez, at an unspecified time and place, tried to prevent Manning from

25  seeing an infectious disease specialist to help him recover from the Valley Fever that Manning

26  contracted at PVSP.  The complaint provides no details regarding the specialist or the treatment

1    that was denied, or Jiminez's role in denying access to the specialist.  ECF No. 10 at ¶ 10.  This

2    allegation is too vague to state a claim for relief.

3              The complaint alleges that Jimenez threatened Manning with placement in

4    administrative segregation (ad seg) or with another transfer if Manning filed this action.  Id.  The

5    complaint does not specify where or when this threat was made.

6              The complaint alleges that Jiminez told Manning in 2008 that he (Jiminez) was

7    close to defendant Bunnell, and that Manning should stop writing books about the prison system.

8    Id.  The complaint further alleges that defendants Ralls, O'Brien and Johnson made statements to

9    Manning indicating that Jiminez was trying to make sure that Manning's books didn't sell and

10    that Jiminez, as CCPOA president, could have plaintiff Manning's mail stolen at any prison in

11    the state.  Id. at ¶¶ 11, 30-33.  These allegations are insufficiently specific to identify affirmative

12    acts by Jiminez that violated Manning's rights.  See Leer, 844 F.2d at 633 (liability under § 1983

13    only if defendant does an affirmative act that causes the alleged constitutional deprivation).

14                        *Defendant Schroeder*

15              The complaint's only reference to this defendant reads in full: "Defendant F.

16    Schroeder is a Captain employed by CSP, Sacramento.  It is alleged on information and belief that

17    in 2009, Defendant F. Schroeder attempted to transfer Plaintiff Manning to another State Prison in

18    retaliation for his writing books about prison life.  This attempted transfer was disallowed by J.

19    Walker, the then Warden of CSP, Sacramento."  ECF No. 10 at ¶ 6.  This  allegation too vague to

20    state a claim.  Among other things, there are no facts supporting the existence of retaliatory

21    motive or harm from the alleged retaliation.

22                        *Defendant Stratton*

23              Because of negative information about him contained in two of plaintiff's

24    Manning's books, defendant Correctional Sergeant Stratton at CSP-Sacramento is alleged to have

25    engineered an adverse transfer by having Manning's cellmate, on or about April 17, 2009, falsely

26    claim that Manning had raped him.  The inmate (Alonso Dearajo) later admitted to Warden

1 | Walker that defendant Stratton had put him up to the lie. ECF No. 10 at ¶ 34.  It is also alleged

2 | that when Stratton assumed control of plaintiff Manning's building on October 30, 2012, he

3 | immediately ordered Manning locked down in retaliation for his books and correspondence.  Id.

4 | at 16.  If true, such conduct would undoubtedly constitute unlawful retaliation.  However, the

5 | Amended Complaint contains no facts other than conclusory allegations supporting the existence

6 | of retaliatory motive on the part of Stratton.

7 | The deficiency is not cured by the allegations that other defendants made

8 | statements to Manning indicating that they and Stratton would attempt to keep plaintiff's books

9 | from selling and could have Manning transferred by making false threat reports if Manning did

10 | not drop this lawsuit.  Id. at  ¶¶ 11, 30, 33.

11 | *Defendant Goldsmith*

12 | Defendant Goldsmith was the CSP-Sacramento mailroom supervisor.  He is

13 | alleged to have made a personal call to a private citizen (David Quint) telling him not to read

14 | plaintiff Manning's books or to write to Manning.  The Amended Complaint alleges that

15 | defendants Crouch and Johnson made statements to Manning implying that Goldsmith was part of

16 | the effort to punish Manning. ECF No. 10 at ¶¶ 14, 28, 33.   These allegations do not establish

17 | the elements of a § 1983 claim either for a direct violation of the First Amendment or for

18 | retaliation.

19 | *Defendant Humphries*

20 | Defendant Humphries is alleged to have been directly involved in efforts at CSP-

21 | Sacramento to steal, stash, and shred plaintiff Manning's incoming and outgoing mail to and from

22 | plaintiff Andrist, various attorneys, public officials and private citizens.  Defendant Humphries

23 | allegedly told Manning that he went through Manning's mail in the mailroom on a routine basis,

24 | and that defendant Johnson gave defendant Humphries all of plaintiff's mail to stash.  Humphries

25 | told Manning, "Dude you have a lot of books and mail you will never get."  In 2008, defendant

26 | Ralls told plaintiff that he would work with individuals including Humphries to keep plaintiff's

1   books from selling.  ECF No. 10 at ¶¶ 9, 11.  These allegations suggest First Amendment

2   violations but fail to satisfy the applicable pleading standards.  Among other things, the allegation

3   that "all" Manning's mail was stashed is belied by the mail logs attached to the complaint, ECF

4   No. 10-4.

5            *Defendant Johnson*

6            Defendant L. Johnson, a correctional officer assigned to the CSP-Sacramento

7   mailroom, is claimed to have stolen or delayed delivery of mail between plaintiffs Manning and

8   Andrist.  Plaintiffs also allege that defendant Johnson has been disciplined for destroying and/or

9   delaying not only mail to and from plaintiffs, but also mail to and from other inmates.  Defendant

10  Humphries told Manning that Johnson gave Humphries all of plaintiff Manning's mail to stash.

11  In 2008, defendant Ralls told Manning that he (Ralls) would work with corrections staff including

12  Johnson to keep Manning's books from selling.  Ralls also stated that defendant Johnson was

13  heading the effort to keep plaintiff's endorsements and political letters from him.  Defendant

14  Couch told Manning that Johnson was in charge of the group responsible for interfering with

15  plaintiffs' mail and that Johnson had phoned a Ryan Mac at US Mint Green Publishing Co.,

16  telling him not to sponsor plaintiff Manning's books.  Defendant Wenker, another mail room

17  worker, told Manning that Johnson had showed him a cache of plaintiff Manning's mail and

18  indicated disapproval of his books.  Defendant Compton told plaintiff Manning that defendant

19  Johnson was being instructed by unnamed superiors not to process plaintiff Manning's mail with

20  that of other inmates and to store it in a separate location.

21            Defendant Johnson is alleged to have hidden thousands of pieces of mail.  Johnson

22  once told plaintiff Manning angrily that Manning would never get his books as long as he

23  (Johnson) ran the mailroom.  He indicated he had copies of Manning's books Kids Killing Kids

24  and American Dream - A Search for Justice, and had shared them with other defendants and with

25  additional prison officials.  They used the books "to teach mailroom staff how to fuck with

26  litigious inmates."  Johnson told Manning he would never get all of his mail at any prison, and

that he (Johnson) was on a campaign against Manning because of what was in Manning's books. Johnson allegedly said "We all know you dude.  And we own this place."  ECF no. 10 at ¶¶ 5, 9, 11, 28, 31-33.

Assuming the truth of these allegations, and the truth of the underlying matters asserted in the numerous alleged hearsay statements, this conduct would constitute retaliation and direct interference with Manning's First Amendment rights.  As presently pleaded, however, the claims are insufficient for the reasons previously noted.  Among other things, the allegations that Johnson stashed and/or destroyed "all" Manning's mail are contradicted by the mail logs, ECF No. 10-4.  Moreover, the complaint does not contain facts establishing either direct injury to particular speech protected by the First Amendment or a chilling effect or other injury from retaliation.

### Defendant Ralls

Defendant Ralls, a correctional sergeant at CSP-Sacramento, told plaintiff Manning to stop writing his books about prison life and threatened transfer in retaliation.  No details regarding this alleged threat are provided.  In 2008, defendant Ralls told plaintiff Manning that he was friends with defendant Bunnell and he (Ralls) would work with defendants Wenker, Humphries, Jimenez, Stratton and Johnson to keep plaintiff Manning's books from selling.  Ralls also told plaintiff Manning that his endorsements and political letters would be kept from him and that defendant Johnson was heading the effort against plaintiff Manning.  ECF No. 10 at ¶ 11.  Without more, these allegations do not state a claim against defendant Ralls.

### Defendant Wenker

Defendant R. Wenker, who was assigned to the CSP-Sacramento mailroom, is alleged to have participated directly in efforts to steal, stash, or shred plaintiff Manning's mail.  No details of Wenker's participation are provided, however.  Defendant Ralls told Manning he would work with individuals including Wenker to keep Manning's books from selling.  On October 18, 2012, in retaliation for Manning's publications, Wenker issued an unfounded CDC

1    115 Rules Violation Report for "possession of contraband."  The "contraband" consisted of three

2    state-issued indigent envelopes which Manning possessed and used legitimately.  On October 22,

3    2012, defendant O'Brien told Manning that he, Wenker, and May had read two letters that

4    Manning would be getting that night from his lawyer.  Wenker himself told Manning that he was

5    in a group required to read Manning's books.  Defendant Wenker told him he was working the

6    mailroom "because of dudes like you" and that when he had gotten to the mailroom a year prior, a

7    group of people including defendant Johnson had showed him a cache of plaintiff Manning's

8    mail.  He told plaintiff Manning he had brought "heat" with his books.  ECF No. 10 at ¶¶ 8, 11,

9    30-31, 35.

10             Reading two pieces of confidential legal mail is highly improper but likely

11   constitutes a de minimus injury that does not alone rise to the level of a First Amendment

12   violation.  Retaliatory filing of an unfounded disciplinary charge does constitute a cognizable

13   adverse action, Hines, 108 F.3d at 269, but plaintiffs have failed to allege the essential elements

14   of a retaliation claim under the standards discussed above.

15                      Conspiracy

16             In opposition to the motion to dismiss, plaintiffs rely heavily on their conspiracy

17   theory.  Plaintiffs argue in essence that any deficiencies in the allegations against individual

18   defendants are overcome by the overarching allegation that all defendants were part of a common

19   campaign to punish Manning for his writing and to interfere with his communications with his

20   publisher and the outside world.  As plaintiffs would have it, the allegation of a conspiracy

21   relieves them of the burden of pleading otherwise necessary facts as to any individual defendant.

22   There is one basic problem with this argument: the complaint does not allege a conspiracy.

23             As previously noted, the Amended Complaint fails to plainly set forth a conspiracy

24   claim despite the court's previous order addressing the matter.  See ECF No. 9.  In order to plead

25   a conspiracy under § 1983, plaintiffs must show an agreement or meeting of the minds to violate a

26   constitutional right.  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).  Conclusory allegations

20

of conspiracy are insufficient.  A plaintiff must provide material facts that show the existence of an agreement.  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (affirming district court's dismissal under Fed. R. Civ. P. 12(b)(6) where plaintiff provided only conclusory allegations of conspiracy).  The defendants must have, "by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage."  Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir.) (quoting Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir.1990)), cert. denied, 528 U.S. 1061 (1999); see also, Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

The Amended Complaint contains much impassioned rhetoric about a long-standing pattern of retaliation against Mr. Manning, and many accusations of serious misconduct, but does not allege facts sufficient to show a meeting of the minds among all defendants or any of them.  The complaint includes numerous allegations about statements that various defendants made to Manning, implicating various other defendants.  Some of these statements merely report on the actions of other defendants, others reflect a shared hostility toward Manning, and some report coordinated actions against Manning.  Without facts showing an agreement or agreements among specific individuals, however, and facts to link those agreements to specific violations of plaintiffs' rights, the allegations are insufficient to support a conspiracy claim.

### Leave To Amend The First Amendment Claim(s)

For all the reasons explained above, Claim Two is insufficient to state a claim against any defendant for a direct violation of plaintiff's First Amendment rights, for retaliation, or for conspiracy.  Plaintiffs seek leave to amend in order to cure the deficiencies of the First Amended Complaint.  Rule 15(a), Fed. R. Civ. P., provides that "leave to amend shall be freely given when justice so requires."  This is a generous standard.  See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).  Accordingly, and because the complaint does present putative First Amendment claims that are colorable and potentially serious, the

1   undersigned will recommend that plaintiffs be granted a final opportunity to amend their First

2   Amendment claim(s).  The Second Amended Complaint should clearly distinguish plaintiff's

3   claims of direct violations of his First Amendment rights from his retaliation claims, and must

4   plead specific facts to support any conspiracy claim.

5                                *Claim Three: Negligence by Mail Tampering*

6                    Plaintiffs' Third Claim for Relief is captioned "Negligence per se in violation of

7   mail tampering statute."  ECF No. 10 at 17.  Plaintiffs allege that defendants' theft, destruction

8   and interference with Manning's mail violated various federal criminal statutes, 18 U.S.C. § 1693

9   et seq., and therefore constitute "negligence per se."   California Evidence Code § 669, the

10  "negligence per se" provision, establishes a presumption of failure to exercise due care when:

11              (1) Defendant "violated a statute, ordinance, or regulation of a
                public entity";
12
                (2)  "The violation proximately caused death or injury to person or
13              property";

14              (3)  "The death or injury resulted from an occurrence of the nature
                which the statute, ordinance or regulation was designed to prevent";
15              and

16              (4)  "The person suffering the death or injury to his person or
                property was one of the class of persons for whose protection the
17              statute, ordinance, or regulation was adopted."

18  Cal. Evid. Code § 669(a); see also Spencer v. DHI Mortgage Co., Ltd., 642 F. Supp. 2d 1153,

19  1161-62 (E.D. Cal. 2009).

20                  The "negligence per se" provision is a rule of evidence, it does not create a

21  substantive cause of action for the violation of a statute.  Spencer, 642 F. Supp. 2d at 1162.  "[A]n

22  underlying claim of ordinary negligence must be viable before the presumption of negligence of

23  Evidence Code section 669 can be employed."  Cal. Service Station and Auto. Repair Ass'n v.

24  American Home Assurance Co., 62 Cal.App.4th 1166, 1178 (1998).  Plaintiffs here have not

25

26

alleged the elements of common law negligence.[11]  On the contrary, the allegations of the

complaint all involve deliberate interference with constitutional rights.  Plaintiffs provide no

authority for the dubious proposition that negligent handling of inmate mail states a claim for

relief on any theory.  See Stevenson, 877 F.2d at 1440-41 (negligent interference with inmate

mail does not state a claim under 42 U.S.C. § 1983).

Moreover, the underlying statutes on which plaintiffs rely for "per se negligence"

are incompatible with a negligence theory.  Mail tampering involves deliberate misconduct.  See

18 U.S.C. § 1701 (prohibiting "knowing and willful" obstruction of mail), § 1702 (prohibiting

obstruction of correspondence "with design to obstruct the correspondence, or to pry into the

business or secrets of another"),  § 1705 (prohibiting "willful[] or malicious[]" destruction of

mail).

There is no private cause of action for violation of the federal mail tampering

statutes.  See Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1340 n. 20 (9th Cir.

1987).  Nor is there a cause of action for violation of inmates' First Amendment rights by

negligent mail handling.  Stevenson, 877 F.2d at 1440-41.  Plaintiffs may not circumvent these

rules by relying on a "negligence per se" theory for which they can provided no authority.[12]

Because "negligence by virtue of deliberate mail tampering" is oxymoronic as well as legally

baseless, Claim Three should be dismissed with prejudice.

### *Claim Four: Negligence by Violation of Inmate Mail Regulations*

Plaintiff's Fourth Claim for Relief is also based on a defective "negligence per se"

theory.  Plaintiffs allege that defendants violated the state administrative code sections governing

inmate mail, 15 Cal. Code Regs. §§ 3130, et seq, and therefore are liable per se for negligence.

---

[11]     The traditional elements of negligence include duty, breach of duty, causation, and injury.  J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 396 (2009).

[12]     No authority, state or federal, recognizes the cause of action presented here.  Plaintiffs conceded as much at the hearing.

1   ECF No. 10 at 18.  This claim suffers from the same fundamental and incurable defect as Claim

2   Three.  This is not a negligence case.  Claim Four contains no factual allegations that could

3   plausibly be construed as establishing negligence.  Indeed, under the heading of Claim Four

4   plaintiffs reassert their allegation of a "long term pattern of retaliation."  Id. at ¶ 75.  Retaliation

5   by definition is intentional.  Plaintiffs' own allegations therefore undercut their assertion of

6   potential liability for negligence.

7          As explained in relation to Claim Three, negligence per se is not a cause of action.

8   See Spencer, 642 F. Supp. 2d at 1162.  There is also no California authority recognizing liability

9   in negligence for conduct that violates Title 15.  Because this claim is not based on a cognizable

10  legal theory, it must be dismissed with prejudice as not curable by amendment.

11              *Claim Five: Tortious Interference with Contract and/or Prospective*

12              *Business Advantage*

13         Plaintiffs' final state law claim alleges interference with their contractual

14  relationship.  Plaintiffs allege that they have a binding contractual arrangement whereby plaintiff

15  Andrist publishes books written by plaintiff Manning.  Plaintiffs claim that their efforts to

16  correspond with each other have been thwarted by the defendants.  In addition, plaintiffs allege

17  that defendants have shredded, delayed or stolen mail between Manning and various attorneys,

18  state and federal officials, and concerned citizens regarding his books, including correspondence

19  about potential endorsements.  Plaintiffs allege that defendants' conduct in this regard has been

20  "highly intentional and/or grossly and recklessly negligent."  ECF No. 10 at ¶¶ 79-85.

21         There are several problems with this claim.  First and most fundamentally, tortious

22  interference with a contract requires a contract.  See Online Policy Grp. v. Diebold, Inc., 337 F.

23  Supp. 2d 1195, 1205 (N.D. Cal. 2004).[13]  The complaint includes no allegations from which the

24

25      [13]    Under California law, the elements of intentional interference with contractual
    relations are: (1) a valid contract between the plaintiff and a third party; (2) the defendant's

26                                                                            (continued...)

existence and terms of a contract can be established.  At hearing, plaintiffs acknowledged that there is no written contract.  They were unable to articulate any facts that could be alleged to support the existence of an oral or implied contract.  See Khoury v. Maly's of California Inc., 14 Cal. App. 4th 612, 616 (1993) (pleading requirements for oral contract); Silva v. Providence Hospital of Oakland, 14 Cal. 2d 762, 773 (1939) (elements of implied contract).  Nor have plaintiffs identified, or indicated that they could identify, any contractual obligation between the plaintiffs the performance of which was impaired by defendants' actions.  To the contrary, the complaint itself demonstrates that Andrist was able to publish several of Manning's works during the relevant time period.

Even if a contract existed, there can be no liability for interference without knowledge of the contract.  Online Policy Grp., 337 F. Supp. 2d at 1205.  Defendants correctly point out that the Amended Complaint is entirely devoid of any allegations that any defendants were aware of the purported contract.  Contrary to plaintiff's insistence, the fact that (some) defendants knew that Manning had published books does not support an inference that they knew of an ongoing contractual relationship with Andrist.  Nor does the allegation that defendants wanted Manning to stop publishing support an inference that they intended to induce a breach of a specific contract.  See id.  For these reasons, the complaint fails to state a claim for tortious interference with a contract.

The alternative "interference with prospective business advantage" theory is equally deficient.  Plaintiffs have identified no prospective business advantage that was injured by defendants.  See Youst v. Longo, 43 Cal. 3d 64, 71, n. 6 (1987) (claim for interference with prospective business advantage requires the existence of a specific economic relationship, the

<hr>

[13](...continued)
knowledge of this contract; (3) intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the relationship; and (5) resulting damage.  Online Policy Grp., 337 F. Supp. 2d at 1205.

probability of economic benefit to plaintiff from that relationship, and defendant's knowledge of and deliberate interference with the relationship).  At hearing, counsel for defendants suggested that but for defendants' actions Manning could have secured endorsements that would have increased sales of his books.  This assertion is entirely speculative.  Plaintiff has proffered no facts that might constitute an economic relationship sufficiently established and prospectively profitable to support such a claim.  The complaint therefore fails to state a claim for interference with prospective business advantage.

Finally, defendants Humphries, Johnson, Ralls and Wenker argue that Claim Five is foreclosed by 15 Cal. Code Regs. § 3024, which prohibits California inmates from engaging in business.  Defendants contend that because the regulation prohibits Manning from conducting business or profiting from his writing, he may not seek damages for interference with his ability to conduct business or profit from his writing.  The regulation provides:

> (a) Inmates shall not engage actively in a business or profession except as authorized by the institution head or as provided in Section 3104 [regarding authorized handicraft sales].  For the purpose of this section, a business is defined as any revenue generating or profit making activity. An inmate who is engaged in a business or profession prior to commitment to the department shall assign authority for the operation of such business or profession to a person in the community.
>
> (b) Inmate mail may be rejected by an institution head or designee for reasons which include, but are not limited to, the mail relates to the direction of an inmate's business or profession. This does not, however, prohibit mail necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment.

15 Cal. Code Regs. § 3024.

Plaintiffs insist that the First Amendment precludes application of § 3024 to Manning's publication of books.  The regulation, however, has never been applied against Manning to prohibit his publication of books.  This case is entirely unlike Abu-Jamal, 154 F.3d 128, in which the Court of Appeals for the Third Circuit found a First Amendment violation in the selective, content-based application of a similar prison regulation to a high-profile death row

26

1  inmate who was also a journalist.  Abu-Jamal was wrongly prohibited from publishing.  That was
2  the basis of his First Amendment claim.  Manning has been permitted to publish.  As plaintiffs'
3  counsel acknowledged at the hearing, prison officials have recognized that Manning has a First
4  Amendment right to publish and have not invoked § 3024 to stop him.  What is at issue here is
5  whether in light of § 3024, Manning can have a contractual right to payment or royalties for his
6  writing, or any expectation of prospective economic advantage, that gives rise to liability for
7  tortious interference under California common law.  Abu-Jamal has nothing to say about that very
8  different question.

9      The other cases on which plaintiff relies, Simon & Schuster, Inc. v. Members of
10 the New York State Crime Victims Board, 502 U.S. 105 (1991) and Keenan v. Superior Court of
11 Los Angeles County, 27 Cal.4th 413 (Cal. 2002), are equally inapposite.   Both cases involve so-
12 called "Son of Sam laws" that required profits or proceeds from a publication by a convicted
13 person about his or her crime to be used for victim compensation.  Both the United States and
14 California Supreme Courts held that such laws were impermissibly content-based.  Neither case
15 was about the application to publishing of a prison regulation limiting inmate business activity
16 generally.  Still less was either case about the ability of an inmate subject to a prohibition on
17 earned revenue to maintain a cause of action for tortious interference with contract or with
18 prospective business advantage.

19     While the First Amendment applies (with potential limitations) to plaintiffs' ability
20 to publish Mannings writings, it does not protect Manning's ability to profit economically from
21 his writing.[14]  The undersigned agrees with defendants that because Manning is a prisoner and
22 barred by the regulation from conducting business and profiting from his writing, he can have no
23 legally-enforceable contractual rights or expectation of prospective economic advantage in

24
25  [14]     The complaint does not allege that Manning has been or should be compensated
    for his writing, or that § 3024 has been applied to prevent him from profiting.  The prohibition
26  on inmate business activities arises as an issue in this case only in the Rule 12(b)(6) context
    regarding the viability of Claim Five.

1  relation to the publication of his books.  For this reason, amendment of Claim Five to cure its

2  pleading deficiencies would be futile.

3       Injunctive Relief

4       Plaintiffs seek injunctive relief in the form of an order precluding the transfer of

5  plaintiff Manning from CSP-Sacramento "without just cause and without the specific approval"

6  of the warden.  ECF No. 10 at 20.  Defendants Humphries, Johnson, Ralls and Wenker move for

7  dismissal of this request because these defendants do not have the authority to provide such relief.

8  ECF No. 45 at 9.  To proceed on claims for injunctive relief an official must be named who could

9  appropriately respond to a court order on injunctive relief should one ever be issued.  Harrington

10 v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294,

11 1304 (S.D.N.Y. 1988).  In the instant case, such an official has not been named.  Plaintiffs

12 concede the point.  ECF No. 50 at 6.  Accordingly, defendants' motion should be granted.

13      Accordingly, IT IS HEREBY RECOMMENDED that the motions to dismiss, ECF

14 Nos. 19, 25, and 45, be GRANTED  as follows:

15      1.  Claim One, alleging violation of the Eighth Amendment and pendent state law

16 claims based on the Valley Fever allegations, and the related prayer for injunctive relief regarding

17 medical care for Valley Fever, be dismissed with prejudice;

18      2.  Claims Three and Four, alleging negligence, be dismissed with prejudice;

19      3.  Claim Five, alleging tortious interference with contract and/or interference with

20 prospective business advantage, be dismissed with prejudice;

21      4.  Plaintiffs' prayer for injunctive relief in the form of an order preventing his

22 transfer be dismissed with prejudice;

23      5.  Claim Two be dismissed without prejudice, and plaintiffs be granted leave to

24 amend their claim(s) premised on violations of the First Amendment, retaliation for the exercise

25 of First Amendment rights, and related conspiracy;

26      6.  The second amended complaint be filed no later than twenty-eight days

28

1   following the district judge's adoption of these Findings and Recommendations should that occur.

2          These findings and recommendations are submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

4   days after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7   shall be served and filed within fourteen days after service of the objections.  The parties are

8    advised that failure to file objections within the specified time may waive the right to appeal the

9   District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   DATED: May 23, 2013.

11

12   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

13

14   AC:009
     mann2440.mtds

15

16

17

18

19

20

21

22

23

24

25

26