UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHERMAN D. MANNING,

Plaintiff,

v.

M. BUNNELL, et al.,

Defendants.

No. 2:12-cv-2440 MCE AC P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se who seeks relief pursuant to 42 U.S.C. § 1983. Before the court are (1) defendant Stratton's response to plaintiff's allegations of ongoing harassment (ECF No. 142), as directed by prior order; and (2) petitioner's Notice of Interference, Motion for Court Order, and Motion for Temporary Restraining Order (ECF No. 135).

BACKGROUND

Throughout the history of this case, plaintiff has filed repeated requests for preliminary injunctive relief and court intervention in his conditions of confinement. Plaintiff has been repeatedly warned not to file repetitive, piecemeal, and unsubstantiated requests for interim relief. Plaintiff has also filed repeated requests for reconsideration of court orders denying his various requests. In addition to filing frequent motions and requests, plaintiff indundates the court with notices and letters regarding his concerns. Even a cursory review of the docket indicates that plaintiff, despite his persistent complaints that he is being denied access to the court, contacts the

court on a regular basis to express his concerns and seek intervention in his custodial circumstances. Given this court's caseload, it is literally impossible to respond to each of plaintiff's filings. Nonethless, the undersigned has attempted to sort wheat from chaff and to respond to the most serious issues presented.

DEFENDANTS' RESPONSE TO JULY 18, 2014 ORDER

By order filed on July 18, 2014 (ECF No. 131), defendant Stratton was directed to respond to plaintiff's allegations that he, Correctional Sergeant Stratton, had threatened to "set up" plaintiff with a cellmate who would either rape plaintiff or accuse plaintiff of rape. See ECF No. 130. Additionally, defendants were required to inform the court regarding plaintiff's access to his legal mail and property in administrative segregation, based on plaintiff's representation that such placement was imminent. See ECF Nos. 130, 131.

Plaintiff had alleged that on July 10, 2014, defendant Stratton told him that when he goes from "the hole" to "suicide," his legal mail will be stolen and he will have no telephone access. Plaintiff alleged this was an attempt to force dismissal of the instant case. ECF No. 130. In his response, defendant Strattron declares that while he was working on July 10, 2014, he did not speak to plaintiff that day and rarely sees him. Defendant Stratton denies plaintiff's allegation that he threatened to cell plaintiff with an inmate who would either rape plaintiff or accuse him of rape. ECF No. 142, Exhibit A, Declaration of J. Stratton ¶¶ 4, 9.

Defendant Stratton states that his duties include supervising correctional officers "in maintaining the safe custody, discipline, and welfare of inmates on second watch"; calling the roll of correctional officers (C/O's); conducting inspection tours of the units to ascertain that C/O's diligently perform their duties; conveying complaints of C/O's and inmates to his superiors; checking periodic inmate counts; directing inspections of inmate quarters; developing procedures and post orders, "and promoting acceptable attitudes and behavior of inmates." Id. at 2. Under penalty of perjury, defendant Stratton further declares that in his position as a second watch correctional sergeant he does not process inmate mail nor have access to plaintiff's legal mail; rather, inmate mail is distributed during the third watch and legal mail is processed through the program office. Id. ¶ 5. Defendant Stratton avers that he has neither threatened plaintiff with ad

seg placement nor denied him access to his legal mail or a telephone. Id. ¶ 4. Further, he does not have the authority to place plaintiff in ad seg as such placement requires a lockup order which must be signed by someone of a higher rank, that of lieutenant or higher. Id. ¶ 6.

Defendant Stratton declares that so long as an inmate has an active case, he will have access to his legal property when placed in ad seg; otherwise the legal property is stored in Receiving and Release to which the prisoner can seek, and will be provided, access. Id. ¶ 7. Inmates in ad seg also have legal mail, phone and law library access. Id. Finally, defendant Stratton vows that because he does not spend much time in the housing units, he was not aware that plaintiff's cellmate had moved and that he does not sign off on cell partner requests which requests are handled by unit staff. Id. at 8. The court finds that its order of July 18, 2014 has been discharged.

Plaintiff, in a rapid response to defendant Stratton's declaration,[1] contends that the mail goes to defendant Stratton's office while he is on second watch, that Stratton routinely works double (second and third watch) shifts, and that he had spoken to Stratton at 6:45 p.m. on August 11, 2014 which is during third watch.[2] ECF No. 144. Plaintiff declares that in 2009 defendant Statton assigned him a cellmate named Alonso Dearujo who made false allegations against him, and that defendant Stratton "clearly admits" to signing off on cell partners (although plaintiff does not explain where any such admission by Stratton can be found). Id. Plaintiff further avers that there is no telephone access in ad seg. Id.

Plaintiff maintains that he has not yet been placed in ad seg because the court has been placed "on notice of their plans." Id. at 4. Plaintiff claims that an inmate placed in ad seg who is on suicide watch gets no property and that every time he has been placed in ad seg he has been placed on suicide watch. Id. Plaintiff then segues into what he terms defendant Stratton's "long history" of "abusing inmates," and asks the court to verify this with specifically named

[1] The rapidity of plaintiff's response reflects that he promptly received service of defendant's filing, despite the alleged ongoing interference with his mail.

[2] Specifically, plaintiff declares under penalty of perjury that defendant Stratton stated to him: "Did you get my lawyer's response yet? She's got you. She'll make you look stupid. You ain't no lawyer. We stick together. You ain't that smart[,] dude. Now keep crying and watch your case get dismissed." ECF No. 144 at 3-4.

correctional staff. Id. at 5-6. Plaintiff avers that defendant Stratton has participated in two inmate "killings," and "strongly request[s]" the court to order he be placed on single cell status and that defendant Stratton be directed to stay one thousand feet away from him. Id. at 5.

In a separate document filed the same day, plaintiff also claims that another correctional sergeant informed him that sergeants "run the prison" and can make sure an inmate is placed in ad seg. ECF No. 143 at 2. He reports that Plaintiff further avers that when he asked Warden Virga nine months ago to keep defendant Stratton away from him, the warden stated that he wished that he could, just as he did not like defendant Wenker handling plaintiff's mail while plaintiff was suing him, but that he could not reassign Wenker or Stratton without a court order, because of their union. Id. at 2-3.

The court will consider both defendant Stratton's response to the previous order and plaintiff's related submissions in now addressing plaintiff's most recent requests for emergency and/or preliminary injunctive relief.

MOTION(S) FOR IMMEDIATE INJUNCTIVE RELIEF

After the court had ordered a response from defendant Stratton regarding plaintiff's threat allegations, but before the response was received, plaintiff brought a motion for a temporary restraining order (TRO) or preliminary injunction in the form of letters to the Clerk of the Court. ECF Nos. 134, 135. Plaintiff asks the court to keep defendant Stratton away from him during the pendency of the instant lawsuit and to provide him with "temporary" single cell status. ECF No. 134 at 2, 4-5; ECF No. 135 at 5. In support of this request, plaintiff repeats his allegations that Stratton has threatened him with a cellmate who will either rape plaintiff or accuse plaintiff of rape. ECF No. 134 at 1. Plaintiff also accuses Stratton of listening to plaintiff's phone calls and reading his legal mail. ECF Nos. 134, 135. Further, plaintiff contends that defendant Stratton has disrupted his phone calls with his former counsel Robert Blasier, causing counsel to believe that plaintiff cut off the call. Plaintiff complains that he is no longer permitted to call or exchange confidential legal mail with Mr. Blasier. Id. at 2-3. The court notes that Mr. Blasier has not represented plaintiff in this matter since June 19, 2013. ECF No. 68. Plaintiff also contends that he has never received his copy of the Local Rules that another former attorney, Mr. Kravitz, sent

him. ECF No. 134 at 1. He insists that defendant Stratton has "indicated" to him that he has "his boys withholding" plaintiff's legal mail. Id. Plaintiff claims to have been diligent in his efforts to obtain another lawyer to represent him, but states that twenty-three (23) unmailed letters have been returned to him.

The court construes ECF Nos. 134 and 135 together as a request for a TRO or a preliminary injunction ordering that defendant Stratton be kept no less than 1000 feet from plaintiff or re-assigned to a different facility; that plaintiff be assigned to a single cell; that defendant Stratton be directed not to interfere with his mail; and that plaintiff be allowed a non-collect, unmonitored phone call to his former counsel Mr. Blasier.

I.   Standards for Issuance of a Temporary Restraining Order

A temporary restraining order is an extraordinary measure of relief that a federal court may impose without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller hearing.

The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction. It is apparent, however, that requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2, 98 S. Ct. 359 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).

II.   Standards for Issuance of a Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy, never awarded as of right. Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (internal citations omitted). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

tips in his favor, and that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction may issue where the plaintiff demonstrates the existence of serious questions going to the merits and the hardship balance tips sharply toward the plaintiff, assuming the other two elements of the Winter test are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. See Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits ).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2).

## III. Discussion

### A. *Likelihood of Success on the Merits*

This matter proceeds on plaintiff's second amended complaint against defendants Stratton, Humphries, Johnson, Ralls, May, Couch and Wenker. Plaintiff's presents two claims for relief: (1) retaliation for the exercise of First Amendment rights, and (2) conspiracy to retaliate for the exercise of First Amendment rights. Plaintiff alleges that because he has written and published works critical of prison life and prison officials, and because he corresponds with public officials, files grievances and pursues litigation to vindicate his rights, defendants have threatened to transfer him, brought false allegations against him, interfered with his access to his publisher and to government officials, and stolen, destroyed, hidden, delayed and otherwise interfered with his mail. Plaintiff seeks money damages, including punitive damages.

Claim 1 against defendant Stratton has been dismissed as administratively unexhausted, and plaintiff proceeds against this defendant only on Claim 2, conspiracy to retaliate. See ECF No. 113 (Order adopting the April 2, 2014 Findings and Recommendations (ECF No. 91)).

Although plaintiff has presented dramatic allegations of past and present mistreatment, he

has not established a fair chance of success on the merits of the case.  Accordingly, injunctive relief should be denied even if the other factors weigh in plaintiff's favor.  For the reasons now explained, they do not.

*Likelihood of Irreparable Harm*

The contradictory statements of plaintiff Manning and defendant Stratton raise some troubling concerns.  However, plaintiff's primary and persistent complaint has involved Stratton's alleged interference with plaintiff's legal mail.  Plaintiff's myriad and near-constant filings significantly undermine the claim that his access to the court has been and is likely to be impaired.  Since plaintiff's most recent counsel was relieved approximately two and a half months ago, see ECF No. 100 (order filed on June 5, 2014), plaintiff has filed no less than twenty-five (25) requests, motions or notices with the court.  Plaintiff does not make a showing of irreparable harm that would support injunctive relief regarding his mail.

Plaintiff's uncorroborated allegations regarding threats of bodily harm (or false accusations of misconduct) do not establish a likelihood of actual harm from double-celling.

Plaintiff is not entitled to unmonitored telephone calls with a former lawyer, and is not harmed by their deprivation.

*Balance of the Equities*

Plaintiff seeks relief in the form of orders regarding defendant Stratton's duty assignment, plaintiff's housing assignment, handling of inmate mail and provision of phone calls.  "The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States."  Meachum v. Fano, 427 U.S. 215, 229 (1976);  see also, Toussaint v. McCarthy, 801 F.2d. 1080, 1087 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  "Federal courts have traditionally been reluctant to interfere in the administration of state prisons absent a clear showing of constitutional deprivation."  Gardner v. Johnson, 429 F.Supp. 432, 434  (E.D.Mich.1977); see also  Winsby v. Walsh, 321 F.Supp. 523, 526 (C.D. Cal.1971) (federal courts are generally loathe to interfere with internal prison discipline).  Accordingly, the balance of equities does not lie in plaintiff's favor.

////

*Public Interest*

The public interest does not lie in favor of a court order interfering with plaintiff's housing or the duty assignments of prison staff.

CONCLUSION

For the reasons explained above, plaintiff has not established his entitlement to preliminary injunctive relief.

Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Court Order and Motion for Temporary Restraining Order (ECF Nos. 135) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 19, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE