1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SHERMAN D. MANNING,                          No.  2:12-cv-2440 MCE AC P

12                   Plaintiff,

13        v.                                        ORDER AND FINDINGS &
                                                    RECOMMENDATIONS
14    M. BUNNELL, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se who seeks relief pursuant to 42 U.S.C.

18    § 1983.  Before the court are (1) plaintiff's allegations that his legal property has been withheld,

19    destroyed, or stolen (ECF Nos. 211-213); (2) plaintiff's various allegations of ongoing

20    harassment by defendant Stratton and other corrections employees (ECF Nos. 195, 196, 198, 200,

21    211, 213, 214, 218); and (3) plaintiff's motion for sanctions (ECF No. 215) and motion to compel

22    (ECF No. 217).

23          Throughout this case, plaintiff has filed repeated requests for preliminary injunctive relief

24    and court intervention in his conditions of confinement.  Although plaintiff's requests and notices

25    have been piecemeal, unsupported, duplicative, and histrionic, and he had previously been

26    warned that such filings would be disregarded, the court ordered defendant Stratton and the

27    Attorney General's Office to respond to plaintiff's most persistent complaints, which have been

28    construed as requests for a temporary restraining order or preliminary injunction.  ECF No. 221.

                                                   1

1    All the defendants were also ordered to respond to plaintiff's motion for sanctions and motion to

2    compel.  ECF No. 222.

3    I.       Requests for Temporary Restraining Order or Preliminary Injunction

4            A.       Legal Access

5            Plaintiff filed three letters in which he alleged that correctional officers have deliberately

6    withheld his legal property to persuade him to drop this lawsuit.  ECF Nos. 211-213.  Plaintiff has

7    now filed additional documents alleging that several of his boxes of legal property have been lost

8    or destroyed.  ECF Nos. 226, 241.  Plaintiff requests an order releasing his legal property.  ECF

9    Nos. 211-213.  The court will construe the requests as a motion for a temporary restraining order

10   or preliminary injunction.  Plaintiff's "second request for judicial sanctions" (ECF No. 241) will

11   be construed as both a reply in support of his motion for a temporary restraining order or

12   preliminary injunction and as a reply in support of his previous motion for sanctions.

13           Beyond stating that C.O. Peska told him he would have to have a court order to access his

14   legal properly (ECF No. 212 at 1), plaintiff does not identify any of the individuals allegedly

15   responsible for withholding, losing, or destroying his legal property.  He does claim that the

16   inability to access his legal property is the result of a retaliatory transfer arranged by defendant

17   Stratton with the assistance of Associate Warden Meier.  ECF No. 211.

18           The court ordered the Attorney General's Office to respond to plaintiff's allegations that

19   he was being prevented from accessing his legal property.  ECF No. 221.  The response, filed by

20   Deputy Attorney General Kelli Hammond on April 8, 2015, stated that plaintiff had been

21   provided with part of his legal property on March 3, 2015, but that at the time of the response he

22   was in a mental health crisis bed, where he was permitted to have a pen and paper, but was not

23   allowed to have his legal property.  ECF No. 238 at 3, 5.  Plaintiff now claims that several boxes

24   of his legal property have been lost or destroyed.  ECF Nos. 226, 241.  In response to plaintiff's

25   "second request for judicial sanctions" (ECF No. 241), the defendants represent that plaintiff's

26   boxes of legal property have not been stolen, but are in storage and will be released to him when

27   he is discharged from the Mental Health Crisis Unit.  ECF No. 251 at 1-2.

28   ////

2

1          B.      Harassment and Abuse

2          Plaintiff has also filed multiple documents in which he alleges that various correctional

3   officers have physically and sexually assaulted him (ECF Nos. 213, 214, 218) and that defendant

4   Stratton is harassing him (ECF Nos. 195, 196, 198, 200, 211).  The court will construe these

5   documents as requests for a temporary restraining order or preliminary injunction ordering

6   defendant Stratton and the other identified individuals be kept no less than 1,000 feet from

7   plaintiff and directing Stratton to cease interfering with his mail and medical treatment.

8          Plaintiff alleges that he was physically assaulted by C.O. Evans and that C.O. Walker

9   drew a gun on him during a transport on February 10, 2015 (ECF No. 213 at 1; ECF No. 218 at

10   1), and that upon arrival at his destination, he was sexually assaulted by Sgt. Brainard (ECF

11   No. 213 at 2; ECF No. 214 at 2).  He further alleges that Stratton has (1) forced him to stop taking

12   his medications for his valley fever (ECF Nos. 195, 198); (2) threatened to have two other

13   inmates released from administrative segregation so that they could assault plaintiff (ECF

14   No. 196, 200); (3) interfered with his non-legal mail (ECF No. 200); and (4) orchestrated his

15   transfer to administrative segregation (ECF No. 211).

16          Defendant Stratton and the Attorney General's Office were ordered to respond to

17   plaintiff's allegations.  ECF No. 221.  In response, evidence was presented showing that on

18   February 10, 2015, multiple officers witnessed plaintiff banging his head on the metal portion of

19   the holding cell in the van and threatening to accuse Evans and Walker of assault.  ECF No. 238

20   at 4.  Evidence was also presented showing that Sgt. Brainard had limited interaction with

21   plaintiff, that what interaction there was did not involve any physical contact, and that after

22   plaintiff accused Brainard of sexually assaulting him, plaintiff refused to cooperate with the

23   investigation.  Id. at 4-5.

24          With respect to the allegations against defendant Stratton, evidence was presented

25   showing that plaintiff was placed into administrative segregation and later transferred from CSP-

26   Sacramento when plaintiff expressed enemy concerns and refused to accept a cell partner, and

27   that the decision was made by officers other than Stratton.  Id. at 5-6.  Stratton also argued that he

28   did not have the authority to release inmates from administrative segregation and would not have

1   been able to release any inmates to assault plaintiff.  Id. at 6.  As for plaintiff's claims that

2   Stratton forced him to stop taking his valley fever medication (itraconazole) and interfered with

3   his non-legal mail, the evidence presented shows one refusal by plaintiff, on November 14, 2014,

4   to take his itraconazole and there is no mention of Stratton.  ECF No. 243-1 at 27.   Stratton also

5   argues that the itraconazole was crushed and floated and administered by medical staff.  ECF No.

6   238 at 6.  While plaintiff argues that it was not crushed and floated, he does not deny that it was

7   administered by medical staff.  ECF No. 248.  Plaintiff's prescription records also show that his

8   prescription for itraconazole was renewed as recently as February 24, 2015.  ECF No. 243-1 at 3.

9        Stratton further argues that the evidence shows that plaintiff was no longer housed in his

10   unit during the times at issue.  ECF No. 238 at 5.  Although the response indicates that Stratton is

11   currently a sergeant on B-Facility at CSP-Sacramento, it is not clear from the evidence what unit

12   Stratton was assigned to during the times at issue.  Stratton has previously testified he was

13   assigned to Facility A, Buildings 5 and 8 (ECF No. 142 at 7, ¶ 1), and there is nothing in the

14   record to indicate when his assignment changed.  The evidence presented shows that plaintiff was

15   housed at CSP-Sacramento Facility A from September 3, 2014, to January 15, 2015, and that he

16   was not moved to administrative segregation until January 26, 2015 (ECF No. 238-1 at 3).  The

17   bed assignments print-out indicates that plaintiff was housed in Building 8 while he was housed at

18   Facility A.  ECF No. 238-1 at 3.  It therefore appears that Stratton may have been assigned to the

19   unit plaintiff was housed in for at least a portion of the time during which plaintiff alleges Stratton

20   interfered with his non-legal mail and healthcare.  See ECF Nos. 195, 198, 200.  However,

21   Stratton has previously testified that he is not involved in the processing of inmate mail (ECF

22   No. 142 at 8, ¶ 5) and it is clear from the record that plaintiff is no longer housed at

23   CSP-Sacramento, where Stratton is employed.

24        C.    Standards for Issuance of a Temporary Restraining Order or Preliminary
               Injunction

25        A temporary restraining order is an extraordinary measure of relief that a federal court

26   may impose without notice to the adverse party if, in an affidavit or verified complaint, the

27   movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

28

4

1   movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  The

2   purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller

3   hearing.  The standard for issuing a temporary restraining order is essentially the same as that for

4   issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d

5   832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and

6   preliminary injunctions is "substantially identical").  The moving party must demonstrate that

7   (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of

8   preliminary relief; (3) the balance of equities tips in its favor; and (4) that the relief sought is in

9   the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The Ninth

10   Circuit has held that injunctive relief may issue, even if the moving party cannot show a

11   likelihood of success on the merits, if "serious questions going to the merits and a balance of

12   hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,

13   so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

14   injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127,

15   1135 (9th Cir. 2011) (internal quotation omitted).  Under either formulation of the principles,

16   preliminary injunctive relief should be denied if the probability of success on the merits is low.

17   See Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)

18   ("'[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be

19   shown as an irreducible minimum that there is a fair chance of success on the merits.'" (quoting

20   Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984))).

21        D.    Plaintiff's Access to Legal Property

22        If a request for injunctive relief concerns an inmate's access to the courts, a nexus

23   between the preliminary relief and the ultimate relief sought is not required.  Diamontiney v.

24   Borg, 918 F.2d 793, 796 (9th Cir. 1990) (finding the district court did not err by failing to

25   consider the merits of the underlying suit where preliminary injunction related to access to the

26   courts).  The constitutional right of access to the courts is only a right to bring petitions or

27   complaints to the federal court and not a right to discover such claims or even to litigate them

28   effectively once filed with a court.  See Lewis v. Casey, 518 U.S. 343, 354 (1996); see also

1  Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995).  To maintain an access-to-the-courts claim,

2  an inmate must submit evidence showing an "actual injury" resulting from the defendant's

3  actions.  Lewis, 518 U.S. at 349.  With respect to an existing case, the actual injury must be

4  "actual prejudice . . . such as the inability to meet a filing deadline or to present a claim."  Id. at

5  348-49.  A claim for denial of access to the courts may arise from either the frustration or

6  hindrance of an opportunity to litigate or from "the loss or inadequate settlement of a meritorious

7  case, . . . or the loss of an opportunity to seek some particular order of relief."  Christopher v.

8  Harbury, 536 U.S. 403, 413-14 (2002) (citations omitted).

9          Plaintiff alleges, and defendants May, Stratton, and Couch confirm, that he does not

10  currently have access to his legal property, though he is permitted to have a pen and paper.  ECF

11  Nos. 211-213; ECF No. 238 at 3, 5.  Plaintiff is not currently permitted access to his legal

12  property because he is in a mental health crisis bed and on suicide watch.  ECF No. 238 at 3, 5.

13  Defendants have stated that plaintiff will have access to his legal property once he is discharged

14  from the Mental Health Crisis Unit (ECF No. 251 at 1-2), but there is no indication when that

15  may be.

16          Plaintiff's lack of access to his legal property appears to be legitimately related to his

17  mental health treatment.  Plaintiff's records show he was in a crisis bed from January 15, 2015 to

18  January 26, 2015, and is currently in a crisis bed and has been since March 14, 2015.  ECF

19  No. 238-1 at 3.  Though there was approximately a month and a half that plaintiff was not in a

20  crisis bed, he appears to claim that he has been without access to his legal property since January

21  15, 2015.  ECF Nos. 211-213, 241, 245.  He also claims that he has access to "recent" legal mail

22  (ECF No. 245 at 2) and a review of the docket shows that his ability to file and respond to

23  motions does not appear to be hampered.  Since January 15, 2015, plaintiff has filed eighteen

24  documents with the court (ECF Nos. 211-220, 223, 226, 227, 231, 241, 244, 245, 248), not

25  including two documents he attempted to file under seal which were returned to him (see ECF

26  No. 250).  Notably, the documents filed by plaintiff have included a motion to enlarge his time to

27  file a response to defendants' motions for summary judgment (ECF No. 214), a motion for

28  ///

6

1    sanctions (ECF No. 215), a motion to compel (ECF No. 217), and an opposition to the

2    defendants' summary-judgment motions (ECF No. 245).

3        Plaintiff's requests do not allege that he has been prevented from filing motions or missed

4    any deadlines in this case (ECF Nos. 211-213) and the docket would belie any such claim.  Nor

5    does plaintiff identify any specific documents or pieces of evidence contained in his legal

6    property that he requires to pursue this case.  In his response to the defendants' motions for

7    summary judgment, though plaintiff asserts that his response has been drafted without the benefit

8    of his legal property and he is therefore relying on his memory, he does not claim that he requires

9    any items within his legal property to assist in the preparation of or support his response (i.e.,

10   affidavits or other supportive documents).  ECF No. 245.  Moreover, given that district courts are

11   to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying

12   summary judgment rules strictly," Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010), the

13   court will consider the record before it in its entirety when considering plaintiff's response to the

14   defendants' motions for summary judgment.

15       With respect to plaintiff's claim that several of his legal boxes have been lost or

16   destroyed, since plaintiff does not have access to his legal property, it is unclear how he knows

17   his boxes have been destroyed or lost other than through reliance on inadmissible hearsay.

18   Defendants May, Couch, and Stratton argue that plaintiff's boxes have not been destroyed or lost,

19   but are instead in storage while he is in a crisis bed, though they provide no evidence of how

20   many boxes are being stored.  ECF No. 251.  Regardless, there is no evidence that any of the

21   defendants in this case were involved with the handling or movement of plaintiff's property when

22   he was transferred.  Even if plaintiff's property has been lost or destroyed, absent evidence that

23   defendants in this case were involved, the court has no jurisdiction over this matter.

24       Based on the evidence currently before the court, plaintiff does not appear to have

25   suffered any irreparable injury as a result of his current inability to access his legal property.  Nor

26   does he currently appear likely to suffer future irreparable harm in light of the fact that he has

27   access to writing materials, is receiving his legal mail, discovery is closed, he has responded to

28   the defendants' summary-judgment motions, and there are no other matters or deadlines currently

1   pending.  However, the court recognizes that plaintiff's continued inability to access his legal

2   property may present an issue should the procedural posture of this case change.

3          Plaintiff's request as it relates to his legal property should be denied without prejudice to a

4   renewed motion showing that plaintiff has or is likely to suffer irreparable injury. Plaintiff is

5   advised that if he files a subsequent motion related to his access to his legal supplies, he must file

6   a single, complete motion and not pepper the court with piecemeal requests, as subsequent

7   supplemental filings will be disregarded.  Any such motion must also be supported by competent

8   evidence.

9          E.      The Court Lacks Jurisdiction

10         A district court has no authority to grant relief in the form of a temporary restraining order

11   or preliminary injunction where it has no jurisdiction over the parties.  See Ruhrgas AG v.

12   Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element

13   of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an

14   adjudication.") (citation and internal quotation omitted); Paccar Int'l, Inc. v. Commercial Bank of

15   Kuwait, S.A.K., 757 F.2d 1058 (9th Cir. 1985) (vacating district court's order granting

16   preliminary injunction for lack of personal jurisdiction).

17         With the exception of defendant Stratton, none of the individuals identified by plaintiff in

18   any of his filings have been served or appeared in this action.  Although plaintiff alleges that

19   these individuals have targeted him at Stratton's behest, he provides no evidence other than

20   speculation and inadmissible hearsay to support the allegation that they were acting "in active

21   concert or participation" with Stratton.  See Fed. R. Civ. P. 65(d)(2)(C); Zenith Radio Corp. v.

22   Hazeltine Research, Inc., 395 U.S. 100 (1969).  "A federal court may issue an injunction if it has

23   personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not

24   attempt to determine the rights of persons not before the court." Zepeda v. United States

25   Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985).

26         With the exception of defendant Stratton, none of the individuals identified in the requests

27   are within the court's jurisdiction, and so the court cannot issue a temporary restraining order or

28   preliminary injunction against them.

F.     Plaintiff's Requests are Procedurally Defective

Federal Rule 65(b)(1) permits issuance of a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Plaintiff has not provided the certification required by this rule, and as already addressed, the majority of individuals identified by plaintiff are not defendants to this action and there is no indication they have been served with his requests.  Moreover, though plaintiff has signed some of his documents under penalty of perjury, many of his documents are unsworn and he has not alleged any specific facts to demonstrate the risk of immediate and irreparable injury.  With the exception of access to legal property, plaintiff's allegations are largely based on incidents that have already occurred without any indication that they will be repeated.

With respect to the claims that his access to the courts is being interfered with, plaintiff's numerous filings indicate that, despite his allegations, he is still able to contact the court on a regular basis to express his concerns and seek intervention in his custodial circumstances. Plaintiff has not identified any ways in which his current inability to access his legal property has interfered with his access to the court or identified any specific materials contained within his legal property that he requires.  ECF Nos. 211-213.

If construed as a request for preliminary injunctive relief under Rule 65(a), plaintiff's requests are equally defective.  As noted, plaintiff's allegations are unsupported by competent evidence and relief is sought mainly against individuals over whom the court has no jurisdiction, and who—as far as the court can determine—have had no notice of the request.  To the extent defendant Stratton has received notice of the request, as will be discussed further, the request fails to address the factors governing injunctive relief and has not established that there is a significant threat of irreparable injury.  See Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).

1    Because the court lacks jurisdiction over all identified individuals except defendant

2    Stratton, and because plaintiff has failed to establish a significant threat of irreparable injury, his

3    requests for a temporary restraining order or preliminary injunction should be denied.

4         G.    Plaintiff's Claims for Injunctive Relief Are Moot

5    An inmate's transfer from a prison facility generally moots claims for injunctive relief

6    against officials of that facility.  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.1995); Johnson v.

7    Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  To the extent plaintiff seeks an

8    injunction against officers at CSP-Sacramento, including defendant Stratton, his claims for relief

9    are moot in light of his transfer to California Substance Abuse Treatment Facility and an absence

10   of evidence that he will be subject to those conditions again.  Preiser v. Newkirk, 422 U.S. 395,

11   402-03 (1975).

12        H.    Factors Governing Injunctive Relief

13             1.  Success on the merits

14   This matter proceeds on plaintiff's second amended complaint against defendants Stratton,

15   May, Couch, Humphries, Johnson, Ralls, and Wenker.  Plaintiff presents two claims for relief:

16   (1) retaliation for the exercise of First Amendment rights, and (2) conspiracy to retaliate for the

17   exercise of First Amendment rights.  Plaintiff alleges that because he has written and published

18   works critical of prison life and prison officials, and because he corresponds with public officials,

19   files grievances and pursues litigation to vindicate his rights, defendants have threatened to

20   transfer him, brought false allegations against him, interfered with his access to his publisher and

21   to government officials, and stolen, destroyed, hidden, delayed and otherwise interfered with his

22   mail.  Plaintiff seeks money damages, including punitive damages.

23   Plaintiff's retaliation claim against defendant Stratton has been dismissed as

24   administratively unexhausted, and plaintiff proceeds against Stratton on the conspiracy to retaliate

25   claim only.  See ECF No. 113 (Order adopting the April 2, 2014 Findings and Recommendations

26   (ECF No. 91)).

27   As with plaintiff's previous requests for a temporary restraining order or preliminary

28   injunction, though he has presented dramatic allegations of past and present mistreatment, he has

10

1    not established a fair chance of success on the merits of the case or a serious question going to the

2    merits of the case.  Accordingly, injunctive relief should be denied even if the other factors weigh

3    in plaintiff's favor, which they do not.

4                                    2. Likelihood of Irreparable Harm

5           Though plaintiff makes troubling allegations against Stratton, they are supported by little

6    more than speculation and inadmissible hearsay.  Moreover, there is no evidence that plaintiff has

7    suffered or is likely to suffer irreparable harm.  The evidence shows that plaintiff was transferred

8    into administrative segregation as a result of his claims his safety was at risk from other inmates

9    and there is nothing to support the allegations that Stratton interfered with plaintiff's mail or

10   medical treatment or that he threatened to have plaintiff assaulted by other inmates.  Even if the

11   court takes plaintiff's allegations against Stratton as true, the record shows that plaintiff is no

12   longer housed at the same prison where Stratton is employed, making further harm at Stratton's

13   hands unlikely.  Plaintiff does not make a showing of irreparable harm that would support

14   injunctive relief against Stratton.

15                                   3. Balance of the Equities

16          Plaintiff seeks relief in the form of orders regarding defendant Stratton's duty assignment

17   or plaintiff's housing assignment.  Even if plaintiff were still housed at CSP-Sacramento, "[t]he

18   federal courts do not sit to supervise state prisons, the administration of which is of acute interest

19   to the States."  Meachum v. Fano, 427 U.S. 215, 229 (1976) (citing Preiser v. Rodriguez, 411

20   U.S. 475, 491-492 (1973); Cruz v. Beto, 405 U.S. 319, 321 (1972); Johnson v. Avery, 393 U.S.

21   483, 486 (1969)).  "Federal courts have traditionally been reluctant to interfere in the

22   administration of state prisons absent a clear showing of constitutional deprivation."  Gardner v.

23   Johnson, 429 F.Supp. 432, 434 (E.D. Mich. 1977).  Accordingly, the balance of equities does not

24   lie in plaintiff's favor.

25                                   4. Public Interest

26          The public interest does not lie in favor of a court order interfering with plaintiff's housing

27   or the duty assignments of prison staff, especially when plaintiff is no longer housed at the prison

28   where he was allegedly subject to the conditions at issue.

                                             11

1     I.     Conclusion

2     For the reasons set forth above, plaintiff's request for temporary restraining order or

3     preliminary injunction should be denied.

4     II.    Motion for Sanctions and Motion to Compel

5     Also before the court are plaintiff's motion for sanctions (ECF No. 215) and motion to

6     compel (ECF No. 217).  As ordered by the court (ECF No. 222), defendants have responded to

7     the motions (ECF Nos. 235, 236).  Plaintiff has filed additional documents that the court will

8     construe as his reply in support of the original motions, rather than as separate motions.  ECF

9     Nos. 241, 244.

10          A.     Defendants May, Couch, and Stratton's Service of Supplemental Responses

11          On March 20, 2015, counsel for defendants May, Couch, and Stratton filed a response to

12    the court's March 13, 2015 order requiring the defendants to file proof that they timely served

13    their supplemental responses to Interrogatory No. 3 on plaintiff.  ECF No. 225.  In the response,

14    counsel explained that due to the pending motion for reconsideration, the deadline to serve the

15    supplemental responses was removed from her calendar.  Id. at 2.  When the order denying the

16    motion for reconsideration was filed, on January 27, 2015 (ECF No. 209), counsel prepared draft

17    supplemental responses on February 2, 2015, and sent them to defendants May, Couch, and

18    Stratton for review.  ECF No. 225 at 2.  Counsel believed that the responses had been signed and

19    served the same day.  Id.  It was not until February 20, 2015, that she discovered the supplemental

20    responses had not been signed and served.  Id.  Counsel subsequently contacted the defendants

21    and supplemental responses were served on February 24, 2015.  Id.  Defendants' delay in serving

22    their supplemental responses following the order denying the motion for reconsideration appears

23    to be due to inadvertence and was not motivated by bad faith or a desire to delay the proceedings

24    in this case.  Moreover, plaintiff suffered no prejudice, as his time to respond to the motion for

25    summary judgment filed by defendants May, Couch, and Stratton did not begin to run until the

26    defendants filed their proofs of service.  The court therefore finds that defendants May, Couch,

27    and Stratton timely served their supplemental responses to Interrogatory No. 3 and that they have

28    discharged the court's March 13, 2015 order directing them to file proof of timely service.

12

Since defendants May, Couch, and Stratton timely served their supplemental responses to Interrogatory No. 3, plaintiff's request that their motion for summary judgment be denied on the grounds that they have failed to comply with a court order is denied.

B.     Supplemental Responses to Interrogatories 3 and 4

By order filed on December 22, 2014, all defendants were ordered to provide supplemental responses to plaintiff's Interrogatory No. 3 and defendants Humphries, Johnson, Ralls, and Wenker were ordered to provide supplemental responses to Interrogatory No. 4.  ECF No. 192.  Defendants Humphries, Johnson, Ralls, and Wenker filed a motion for reconsideration. ECF No. 201.  Defendants May, Couch, and Stratton joined the motion.  ECF No. 202.  The motion was denied by the District Judge on January 26, 2015.  ECF No. 209.  On January 30, 2015, defendants Humphries, Johnson, Ralls, and Wenker served their supplemental responses. ECF No. 210.  Defendants May, Couch, and Stratton served their supplemental responses on February 24, 2015.  ECF No. 225.

Plaintiff's motion for sanctions contends that defendants May, Couch, and Stratton have not provided their supplemental discovery responses and that defendants Humphries, Johnson, Ralls and Wenker have provided untruthful responses.  ECF No. 215.  He requests the court sanction the defendants by denying their motions for summary judgment.  Id.

In his subsequently filed motion to compel, plaintiff alleges that defendants May, Couch, and Stratton have provided supplemental responses, but that they are untimely, and that the responses provided by all defendants are deficient or untruthful.  ECF No. 217.  He requests that the court order the defendants to fully and truthfully respond and to issue unspecified sanctions. Id.

As the court previously noted, plaintiff's motion for sanctions is a less well-pled version of his motion to compel, and it was determined that the two motions would be read as one and the unspecified request for sanctions in the motion to compel would be interpreted as a request to deny the defendants motions for summary judgment for failure to comply with the court's December 22, 2014 order.  ECF No. 222 at 3-4.

////

1          1.  Interrogatory No. 3

2          Plaintiff's Interrogatory No. 3, posed to all defendants, requested that they "[s]tate the

3    case name, case number and Court of every litigation matter including civil, criminal and

4    administrative, that you have been named as a party in any capacity."

5          This court previously found that defendants May, Couch, and Stratton had properly

6    responded to Interrogatory No. 3 as it related to any civil actions against them.  ECF No. 192 at

7    5-6.  However, defendants May, Couch, and Stratton were ordered to "supplement their response

8    to identify and indicate the nature of any criminal conviction or administrative action resulting in

9    an adverse finding against them, if any."  Id. at 6.  Because it was unclear whether their response

10   addressed criminal convictions and sustained administrative actions, defendants Humphries,

11   Johnson, Ralls, and Wenker were also ordered to supplement their responses to Interrogatory

12   No. 3. Id. at 6-7.

13         Plaintiff now argues that defendants May, Couch, and Stratton never sent him copies of

14   the print-outs from their Public Access to Court Electronic Records (PACER) searches, as

15   indicated in their original response to Interrogatory No. 3.  ECF Nos. 217 at 1; ECF No. 241 at 4;

16   ECF No. 244 at 1-2.  Defendants assert that they have already provided plaintiff with the PACER

17   print-outs on two separate occasions and have served an additional copy with their response to his

18   motion to compel and for sanctions.  ECF No. 236 at 4.  Though plaintiff appears to claim he has

19   still not received a copy of the PACER print-outs, the court will not require defendants May,

20   Couch, and Stratton to serve copies on plaintiff yet again.  Even if plaintiff has somehow not

21   received copies of the PACER print-outs, their contents were summarized in the court's

22   December 22, 2014 order (ECF No. 192 at 5-6), which plaintiff clearly received.[1]  As previously

23   ///

24

25   [1]  Since plaintiff may not currently have access to the December 22, 2014 order, the court will
     summarize the relevant portion here.  The PACER search results showed that defendants May and

26   Stratton were not parties to any civil cases and defendant Couch was a party in two civil actions:
     Case No. 2:07-cv-1989, closed on 4/1/10 and Case No. 1:08-cv-1621, closed on 1/24/13.  ECF

27   No. 192 at 5-6.  The court took judicial notice of the cases in which Couch was a party and
     determined that "[n]o information related to these cases could be construed as reasonably

28   calculated to lead to the discovery of admissible evidence in the instant action."  Id. at 6.

1 decided, defendants May, Couch, and Stratton have properly responded to Interrogatory No. 3 as

2 it relates to civil cases in which they were parties.

3       With respect to the supplemental responses to Interrogatory No. 3, plaintiff's only

4 complaint appears to be with respect to defendant Stratton's response.  ECF No. 241 at 4-5.

5 Plaintiff asks the court "to view what was purged from Stratton's file and who purged it" and

6 argues that Stratton has an arrest record.  Id.  Since plaintiff did not include these claims until his

7 reply, defendant Stratton has not had an opportunity to respond.  However, Stratton's response is

8 not necessary for a fair adjudication.  With respect to any arrests Stratton may or may not have on

9 his record, defendants were ordered to supplement their response with any criminal convictions.

10 An arrest is not a conviction, and so Stratton was not required to identify any arrests.  As for the

11 adverse action against Stratton that was purged from his personnel file (ECF No. 236-1 at 21,

12 ¶ 8), as a practical matter, if the documentation has been purged, there is nothing left in the file

13 for the court to view.  As for the truthfulness of the response, defendants were required to identify

14 only adverse actions that had been sustained.  Stratton's response that he has only one adverse

15 finding against him, and Deputy Attorney General Hammond's representation that a second

16 adverse action had been purged from Stratton's personnel file, indicates that the purged adverse

17 action was not sustained.  Stratton was not required to identify adverse actions that were not

18 sustained.  The defendants have properly responded to Interrogatory No. 3 and no further

19 responses will be required.

20                 2. Interrogatory No. 4

21       Plaintiff's Interrogatory No. 4, also posed to all defendants, requested that they "[s]tate the

22 date and reason for any workplace discipline that you have received as an employee of the

23 California Department of Corrections and Rehabilitation."  Defendants May, Couch, and Stratton

24 responded that they had not been subject to any disciplinary action.  The court found that it could

25 not "compel a further response in light of the representation that there have been no disciplinary

26 actions." ECF No. 192 at 7.  Defendants Humphries, Johnson, Ralls, and Wenker objected to

27 Interrogatory No. 4 and did not provide a response.  Id.  The court ordered them to identify "each

28 adverse disciplinary action that was sustained against any of them during their CDCR

1    employment, if any exist." Id. at 10.  Humphries, Johnson, Ralls, and Wenker each responded

2    that there were no sustained adverse disciplinary actions against them.  ECF No. 217 at 16, 22,

3    28, 34.

4            First, with respect to plaintiff's allegations that defendants Couch and Stratton are lying

5    about not having been subject to workplace discipline (ECF No. 217 at 2-3; ECF No. 244 at 1),

6    the court already found that it could not "compel a further response in light of the representation

7    that there have been no disciplinary actions" and did not require any further response to

8    Interrogatory No. 4 from defendants May, Couch, or Stratton.  ECF No. 192 at 7.  Plaintiff's

9    allegations that these defendants are lying and that they have been subject to workplace

10   discipline[2] is unsupported by anything but speculation and inadmissible hearsay, neither of which

11   is sufficient to support a request for sanctions or to compel further answers.  The same is true for

12   plaintiff's allegations that defendants Humphries, Johnson, Ralls, and Wenker are lying and that

13   they were all disciplined and fired.  ECF No. 215; ECF No. 217 at 2-4, 244 at 3.  Plaintiff's

14   allegations that former Warden Virga told him these defendants were disciplined and fired is

15   insufficient to support his request to compel further answers and request for sanctions.  The

16   defendants have represented that there have been no sustained disciplinary actions against them

17   and the court cannot compel further responses.

18                  3.  Peter Andrist

19           Peter Andrist is plaintiff's publisher and former co-plaintiff.  See ECF No. 1.  Plaintiff

20   requests sanctions against counsel for defendants Humphries, Johnson, Ralls, and Wenker, stating

21   that she "lied on Peter Andrist by stating that he filed a document (#130) which he did not."  ECF

22   No. 215 at 1.  Counsel avers that her representation that Andrist filed the document at ECF No.

23   200 was based upon information contained on the court's docket and that she was not trying to

24   mislead plaintiff or the court.  ECF No. 235 at 3-4.  The documents at ECF Nos. 130 and 200

25   both currently reflect that they were filed by plaintiff.  However, both docket entries also reflect

26   that they have been modified.  Though the court is unable to tell what the original docket entry

27   
─────────────────────
28   [2]  To the extent administrative actions may be considered workplace discipline, the court finds
     that their inclusion in the supplemental responses to Interrogatory No. 3 are sufficient.

1    said, it is possible that either or both documents initially reflected that they were filed by Andrist.

2    Even if they did not, any such mistaken representation counsel may have made is immaterial to

3    the issues before the court and do not appear to have been made in bad faith or for any improper

4    purpose.  The court will not sanction counsel for what appears to be the result of a clerical error.

5            C.    Conclusion

6            For the reasons set forth above, plaintiff's motion for sanctions (ECF No. 215) and motion

7    to compel (ECF No. 217) will be denied.

8    III.   Conclusion

9            Accordingly, IT IS HEREBY ORDERED that:

10           1.  The responses by Deputy Attorney General Kelli Hammond on March 18, 2015 (ECF

11   No. 224), and April 8, 2015 (ECF No. 238), have discharged the March 11, 2015 order (ECF

12   No. 221).

13           2.  The response by Deputy Attorney General Kelli Hammond on March 20, 2015 (ECF

14   No. 225), has discharged the March 13, 2015 order directing defendants May, Couch, and

15   Stratton to file proof of timely serving their supplemental discovery responses (ECF No. 222).

16           3.  Plaintiff's motion for sanction (ECF Nos. 215, 241) and motion to compel (ECF

17   Nos. 217, 244) are denied.

18           IT IS FURTHER RECOMMNEDED that plaintiff's requests for preliminary injunctive

19   relief (ECF Nos. 195, 196, 198, 200, 211, 212, 213, 214, 218, 226, 227) be denied for the reasons

20   set forth above.

21           These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26   objections shall be filed and served within fourteen days after service of the objections.  The

27   ///

28   ///

17

1 | parties are advised that failure to file objections within the specified time may waive the right to

2 | appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3 | DATED:  May 15, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE